at all. Oral argument not to exceed 15 minutes per side. Ms. Patel for the appellant. Good morning, your honors. May it please the court, Seema Patel on behalf of plaintiff. Your honor, I'm here today on a deliberate indifference case and what I'm asking the court to do is find that seizure disorder is a serious medical need. It's a medical need that needs to be met with the appropriate medical attention. In the district court, the district court held that a seizure disorder is not a serious medical need. He likened it to a minor condition that doesn't necessarily have to be diagnosed or met with life sustaining drugs. I think that the court should make it clear that a seizure disorder is more analogous to heart disease or diabetes and that life sustaining medication, in this case the seizure medication was necessary in order to not bring on the onset of seizures. Mr. McCain, I think that the case, there's a chronology here that's really important in terms of our claims of deliberate indifference. He was booked at the jail on Saturday night. At the time, there was a medical form that was filled out and the form identified that he had a seizure disorder. This form was put in a bin to be picked up by the medical personnel. That is not disputed. That form was found in discovery. We know that the medical personnel had this form. Nothing was done. He didn't, he, on the form he identified that he was taking managed the seizure disorder and that he didn't have his medication with him. All the rest of Saturday night, then Sunday, and then Monday, he was- That first, oh, go ahead. No, I was just going to ask, I mean, even if you started off saying that seizure disorder is a serious medical condition, even if we concede that, you have to show deliberate indifference here. So even on the timeline, even if we assume that Nurse Bishop saw the form, which I know is in dispute, but even if we assume that she saw the form, I mean, she said in her death position that she believed that if he had his medication at 4 p.m. on the day of intake, that he would suffer no adverse consequences if he didn't get his medication on Monday, so, until Monday. I'm not quite sure how she can be deliberately indifferent. Well, I guess it takes a step back. So the serious medical condition is the seizure disorder. Let's say that we agree with you. And the next question becomes, okay, how do you appropriately deal with and treat that serious medical condition? Is it, I mean, nobody disagrees that if it's an acute issue, like someone is bleeding or et cetera, you take them to the hospital and do that. That's not what this case was. He's coming in with a known seizure disorder. So then the question is, how do you appropriately deal with that disorder? Now, I think we have a couple of... Quite the question, right? Because this isn't a negligence claim, right? Failure to adequately treat would be negligence. You have to show something more than negligence. We do have to show something more than negligence, but I think that seizure disorder can be analogized to cases, I mean, this court has issued opinions regarding conditions like heart disease or regarding conditions like diabetes. Now these conditions, the unifying factor is that they, in order to be treated, they have life-sustaining medications that can be issued for that. And our argument is that a seizure disorder falls within that category of types of diseases and types of medical conditions, that there are these life-saving, life-sustaining medications that have to be provided in order to not have the dire consequences you have when you cut off medications. Now, going to your second question, kind of segued into that, which was, we have to prove deliberate indifference. And Nurse Bishop is saying, and in fact all three nurses have testified that they didn't think that this rose to the level of necessary medication, that it could wait until Monday, until the pharmacies open. It wasn't something that they had to get on an emergent basis. Well, that's also, that comes down to a factual dispute because the nurses, all three of them are LPNs, they don't have the necessary expertise to make that judgment. We have the testimony of Dr. Stromberg, and I think the affidavit of Dr. Carley, who were the physicians on call to provide medical care at the facility at the time. And both of them, Dr. Stromberg gave really clear testimony saying, no, a disorder is a serious condition. We have a protocol in place that says that if someone comes in with this disease, they're supposed to get XYZ treatment, we're supposed to get a call, we're supposed to get a consult with a physician. And that just didn't happen in this case. But don't you have to still show some evidence or a reasonable inference that these three plaintiffs disregard something more than negligence in terms of how they treated Mr. McCain? And so, I guess the focus for the district court and Judge Larson's question is really the subjective prong, even if we can see that the objective component has been met. There seems to be an absence of any evidence in the record that these three nurses had this sort of reckless disregard, this intent to cause harm here. And I know you say it's a fact question, maybe a jury question, but there has to be something in the record, doesn't  Well, there is, Your Honor. I mean, I'm sorry. I'm just asking what it is, yeah. Okay, so we're going to always have the self-serving testimony of the defendants. They're going to say, we didn't know that this was a serious need, we didn't know that they needed this medication, we didn't have the reckless disregard, the grossly substandard provision of care that rises to the level of a deliberate indifference claim. Now, our issue in this case was twofold. First, we had to show that they had the requisite knowledge, that they even knew that Mr. McCain had the seizure disorder. We rely on this medical intake form that stated that he had the disorder and that was given and put in the bin for medical to pick up. But we don't know if anyone read it. We don't know if anyone read it, but there's actually precedent from this court in this Skluna v. Wells case from 2003. And in that case, Your Honor, an inmate was transferred to a facility to get medical care from different facilities. The doctor on the transfer form, stated that he needed to be seen emergently for a neurological consult. The doctor didn't see the patient for, I think, 20 or 25 days. And the doctor in that case, just like the nurses here, argued that we didn't see the form, so we didn't have the requisite intent to form the deliberate indifference. But this court in the Skluna case held that, no, no, no, the fact that this form stated that you had to see them, do a neurological consult on an emergency basis, and the fact that you had this form in the ordinary scope and ordinary course of business, you can reach the requisite intent that you knew that this person was supposed to get that. Was there evidence in that case that people usually looked at those forms? Yeah, there was. But that was the problem here. Nurse Bishop testified, yeah, I usually look at the forms, but he came in, she looked at the forms at the beginning of her shift, and he didn't come in at the beginning of her shift. So, I mean, I get, I'm understanding, I think, what that case says, and it makes sense, but I'm not sure it makes sense here, where her point is, yeah, I look at the forms, but I look at them at the beginning of the shift, and he didn't come in. Well, we have three days, we don't just have, like, the beginning of the shift. We have all that night for her shift. We have the testimony of, I think, Methaney and one of the other deputies saying that it was their practice to come down multiple times during the shift to look at the form. Then we have the next day, and I think that Nurse Scheinman was on duty on that day. And then you have the third day, when Nurse Bishop was again on duty, and that's when Mr. McCain suffered his first seizure. So, in terms of when they got this information on the form, when they could be said to have had notice of this condition, we don't have just this one moment in time, we have three days. So, you know, it does seem your case gets maybe a little easier after the first seizure in terms, because by then everybody knows what it is and that he has the problem. You mentioned earlier that there was testimony that there was a protocol at this institution where if there's a seizure, you always call the doctor. Is that true? Yeah. I mean, Dr. Stromberg testified, not always, I'm sorry. No, no, no. There's not a written protocol that says to nurses, if someone seizes, call a doctor. Does that exist? That evidence doesn't exist? We have Dr. Stromberg's testimony, and he was the doctor who, according to his testimony, he developed these protocols, developed the guidelines that the nurses were supposed to follow in terms of how they were supposed to get information regarding an inmate or detainee's medical conditions to the appropriate medical provider. So in his testimony, he said that, yes, there are certain things that we consider urgent, like a seizure was on there, a shortness of breath, or a heart disease. So is there a written protocol or not? There's a mention of a written protocol. I don't think it's in the proofs. In the proofs, we just have Dr. Stromberg's testimony that he developed this protocol for the nurses to follow. Doesn't Dr. Stromberg say, under questioning, so he's talking about the various, it starts with, if an inmate has a seizure while at the jail, is that something that is usually conveyed to the jail doctor? Answer, not always. Okay, but sometimes it is, I would say more often than not, and it goes on, last question. A seizure would be an urgent medical condition? Answer, not necessarily. That's Dr. Stromberg's testimony. So I'm just having a hard time. We don't have a protocol at the jail. You're relying on Dr. Stromberg. My reading of Dr. Stromberg's testimony was that the medical staff was told to report seizures. They were told to report chest pain, trouble of breathing. Those kind of things are considered urgent. Well, this is after he has the seizure, but before, and after he has, I thought we were talking about the initial claim, before the first seizure. Well, I think Dr. Stromberg was talking about the overall procedures, because even though there was a note that said that he was contacted for the Tegretol prescription after the first seizure, he wasn't, because he was on vacation. So his testimony, most of it was, he's talking about the general procedures that are in place at the hospital, I mean, at the jail. I will keep the rest of my time for rebuttal. Thank you. Okay. Thank you. Good morning. May it please the Court, Chief Judge Cole and Judge Larson, Judge Sutton. I'm Don Warwick on behalf of the three nurses, Nurse Bishop, Nurse Sheeman, and Nurse King. I'm going to take Judge Cole's sound advice earlier to try to be brief and not use up all of my time. As it relates to this case, I think the Court has already hit the key issue on the nail on the head when Judge Larson asked about the lack of proofs. Under Comstock and Farmer, as I argued to Judge Cleland, the plaintiff must show, quote, the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner. Nurse Bishop did not. There's no such evidence in this case that she perceived any such harm. Secondly, that he or she did in fact draw that inference. Again, no facts. Thirdly, that he or she disregarded the risk. Again, no facts. Just to respond to a couple of arguments that plaintiff's counsel made, as it relates to this Sunday, Nurse Sheeman was not and plaintiffs never attempted to take evidence that Nurse Sheeman was seeing patients on the 3rd, Sunday the 3rd. Nurse Sheeman and Nurse King did not come in until the 7am morning shift of March the 4th. They were there after the first seizure when the prisoner had been moved closer to the sheriffs, 30-minute checks, and had already been evaluated. Unfortunately, he had a second seizure. So, under the case law, and we cited also under Rule 28G, a Sixth Circuit rule, the court can deem this as appropriate authority under Butterly, Asch, and Woodhull. Those are very analogous cases to this case, which I believe strongly support our opinion. And finally, plaintiffs cited in the trial court, again here to Parsons and Quigley, Parsons involved seizure medication that was available at the jail. Quigley involved contraindication where clearly a psychiatrist should not have prescribed the same medication twice. So, absent any questions, I strongly feel that and would request that the court affirm the summary judgment. Let me just ask you about Nurse King. She seems to be at the end of the chain here. She did not, as I understand it, have any real involvement with Mr. McCain until that second seizure and she came in after Nurse Sheeman. So, I guess we would have to find an inference that she also, because she's a nurse, saw this medical form and had a subjective intent to somehow cause harm, inflict punishment, that sort of stuff. Am I right about that? You're absolutely right about that. She didn't come in until 7 a.m. on Monday? Nurse King had the unfortunate, she was actually not a nurse in this unit typically. She would be evaluating prisoners later. When the second seizure took place, she was called along with Nurse Sheeman and came to the scene. And actually, it was Nurse Sheeman who did most of the evaluating at the time of the second seizure. And again, at that point, the prisoner is sent to the jail, etc. One final point, and you hit on it, Your Honor, is this protocol discussion. There was no protocol produced during discovery that required you automatically contact the physician, etc. And Judge Larson has hit on the key testimony from what I believe was a very self-serving testimony of Dr. Stromberg, who wanted to get out of the case and somehow was dismissed from the case shortly after that testimony. So, thank you very much. Thank you, Mr. Warwick. Ms. Patel, you have your rebuttal. Thank you, Your Honor. Dr. Stromberg's testimony was not self-serving. And the reason that we dismissed him from the case is because, you know, in the first five minutes of the deposition, we learned that he was actually on vacation at the time that this incident occurred. So, it would have been malpractice for us to keep him in the case when we learned that he wasn't even in the country when the incident occurred. I guess I have the same question about Nurse King. She appears on the scene, as I understand it, first time, 7 a.m. shift on Monday. She follows Nurse Scheiman in to help treat Mr. McCain after he's had the second seizure. What evidence is there of, you know, she meets the subjective prong? She's got this culpable state of mind. The culpable state of mind comes from two things. First, before the second seizure, between the first seizure and the second seizure. When the nurses come on shift, the first, and all three nurses testified to this, the first thing that they do is they have a meeting between the person that they're relieving. They talk about what has happened during the shift, if there's anything that needs to concern them, et cetera, and they're told. And, I mean, Nurse Scheiman and Nurse King both testified, yeah, we would have been told about this, the fact that Mr. McCain had had a seizure and that he had been placed on this, quote unquote, seizure protocol. Yeah, but at this time, the medication's already been ordered, right? After the first seizure, the nurse bishop orders the medication, the hospital received the prescription. I mean, they can't have any liability for that. And then when he has his, because the prescription's been ordered, and then he has his second seizure, and what do they do? They call the hospital. So I think that this, like, what would be a good- Call an ambulance. Good counterpoint or foil to, like, when we're looking at their conduct and saying, does this conduct arise to the level of deliberate indifference? Last month, this court issued a case, Winkler v. Madison County. It was also a deliberate indifference case. It was slightly different than the issues presented here, because here we have a known seizure disorder, and we're looking at whether the treatment that was provided was grossly substandard or not. In Winkler, the issue was a misdiagnosis situation. However, there was a claim against one of the nurses, and in reasoning that the plaintiff had not met the deliberate indifference standard, the court analyzed. He said, well, the nurse, it was also an LPN. She gathered the relevant information regarding the condition. She provided that information to a qualified medical professional, and then she followed the directions provided by the medical professional. Those three markers are missing in this case. Nurse Bishop did not call a doctor. She did not take Mr. McCain's vitals. She did nothing except put him on this seizure protocol, which was basically saying, okay, watch him every 30 minutes. Nothing was done to actually responsibly treat the seizure disorder. When it flows over to why Nurse King and Nurse Scheinman are also being held to this deliberate indifference standard and their conduct is also being questioned, is that they would have had this information from Nurse Bishop when they took over for that shift. If they had this information and they knew that none of these baseline markers had been met in terms of providing responsive care for a seizure, I think that you know that this was the medical condition, and this was how it was treated, and it was grossly indifference claim. Thank you, Your Honor. Okay. Thank you, Ms. Patel and Mr. Warwick. We certainly appreciate your arguments this morning. The case will be submitted. You may call the next and final case.